**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
(EAST ST. LOUIS)**

| | | |
|---|---|---|
| ROGER KELSO, individually and on behalf of all similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 03 769 MJR |
| v. | ) ) | |
| COLUMBIA ACORN TRUST and COLUMBIA WANGER ASSET MANAGEMENT, LP, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF COLUMBIA
WANGER ASSET MANAGEMENT'S RULE 12(b)(6) MOTION TO DISMISS**

Defendant, Columbia Wanger Asset Management, L.P. ("Columbia Management"), by its attorneys, Phil C. Neal and Mark A. Rabinowitz, submits its Memorandum of Law in support of its Motion to Dismiss the Complaint filed by plaintiff, Roger Kelso, pursuant to Rule 12 (b)(6) of the Federal Rules of Procedure.

## Introduction

Plaintiff instituted this action on November 19, 2003.[1]  Plaintiff joined as defendants Columbia Trust, a Massachusetts business trust, and Columbia Management, a Delaware partnership, both of which maintain their principal places of business in Chicago, Illinois. Complaint, ¶¶ 6-7. Columbia Trust is the registrant of the Fund. Complaint, ¶ 6. The Fund is an open-end mutual fund which owns a portfolio containing, among other things, foreign securities.

---

[1] Columbia Management assumes the truth of plaintiff's allegations solely for the purpose of this Motion to Dismiss. Stachon v. United Consumers Club, Inc., 229 F.3d 673, 675 (7th Cir. 2000).

Complaint, ¶¶ 10, 14.  Columbia Management is the Fund's investment manager.  Complaint, ¶ 7.

Plaintiff's Complaint alleges that he purchased shares in Columbia Acorn International Fund (the "Fund"), a mutual fund operated by defendants, Columbia Management and Columbia Acorn Trust ("Columbia Trust"), based upon the representation that the Fund offered "various advantages of long term ownership of funds over direct investment."  Complaint, ¶ 10.  Contrary to defendants' representations, plaintiff alleges, defendant's method of valuing foreign securities owned by the Fund during its daily calculation of the Fund's Net Asset Value permits traders called "market timers" to "predict changes in the [Fund's] NAV" based upon subsequent and continuous trading in the foreign securities, world equity market indexes, ADR's and foreign currency futures in foreign markets.  Complaint, ¶¶ 15, 30-31.  Plaintiff has asserted claims for violation of Section 36(a) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35(a) (Count I), common law negligence (Count II) and common law gross negligence (Count III).  However, plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed with prejudice in its entirety.

First, plaintiff lacks standing to assert the claims because they are derivative in nature and not direct.  As plaintiff's Complaint acknowledges, plaintiff allegedly incurred damage as a result of the alleged misconduct because the fund's "NAV is diluted" and the "fund assets suffer dilution."  Complaint, ¶ 36.  Any such injury was suffered by the fund and all shareholders generally and indirectly.  Thus, any claim belongs to, and may be asserted only by, the Fund.  Plaintiff has not alleged that he made the required demand upon the Trust in order to assert claims derivatively.

Second, even if plaintiff's claims somehow are not derivative, plaintiff lacks standing to sue Columbia Management.  As plaintiff's Complaint acknowledges, Columbia Management "has been contracted to serve as  the investment manager for" the fund and Columbia Management's contract to serve as the fund's investment manager is with Columbia Trust, not the shareholders of the fund, such as plaintiff.  Complaint, ¶¶ 6-7.  Columbia Management's duties run to the Fund and Columbia Management owes no duty to plaintiff.

Third, plaintiff's purported individual claim under Section 36(a) of the Investment Company Act of 1940 fails to state a claim upon which relief can be granted because there is no private right of action under that section.

Fourth, the Complaint fails to allege that Columbia Management breached a fiduciary duty involving personal misconduct such as fraud, self-dealing, conflict of interest or personal financial gain as a result of the challenged transactions, as Section 36(a) of the Investment Company Act requires.

Fifth,  plaintiff's state-law claim are preempted because the Investment Company Act, which regulates a mutual fund's duty to calculate its net asset value, requires uniformity with respect to the obligations asserted by plaintiff.

Sixth, plaintiff's state law claims are preempted and barred by the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 77p, 78bb(f), because they are based upon state law and allege a misrepresentation or omission of a material fact or manipulative or deceptive device or contrivance, in connection with the purchase or sale of a covered security.

Accordingly plaintiff's Complaint fails to state a claim upon which relief can be granted and that pleading should be dismissed with prejudice in its entirety.

## Argument

### I.   Plaintiff Lacks Standing.

#### A.   Any Claim Plaintiff Might Have is Derivative in Nature and the Complaint Does Not Satisfy Rule 23.1.

Plaintiff complains that, "when valuing the fund's securities and determining daily NAV," defendants breached a duty of due care to plaintiff by failing "to utilize accurate current market values for such securities."  Complaint, ¶¶ 52, 56.  As a result of that conduct, plaintiff alleges, the Fund's "NAV is diluted" and the "fund assets suffer dilution."  Complaint, ¶ 36. Plaintiff asserts that, due to the alleged misconduct, the Fund experiences "increased trading and transaction costs, disruption of planned investment strategies, forced and unplanned portfolio turnover including the liquidation of investments to meet market timer redemption requests, lost opportunity costs and asset swings that negatively impact fund operations, performance and the ability of the fund to provide a maximized return to long term shareholders."  Complaint, ¶ 38.

Thus, any damage incurred by plaintiff as a result of the alleged misconduct was suffered by all Fund shareholders indirectly as a result of the alleged dilution of the Fund, rather than directly and individually.  Plaintiff fails to allege any damage that he suffered directly and individually, rather than jointly and indirectly as one of the numerous shareholders of the Fund. Accordingly, any claim belongs to, and may be asserted only by, the Fund.

Where a legal entity sustains direct injuries and its shareholders suffer no direct individual harm separate and distinct from that generally inflicted on the entity, only that entity owns and can assert any claim to recover its damages.  See Jackson v. Stuhlfire, 28 Mass. App.

Ct. 924, 547 N.E.2d 1146, 1148 (Mass. App. Ct. 1990) (shareholders may not assert claim when corporation suffers direct injury, which affects shareholders generally merely as owners of corporate stock); Green Nuveen Advisory Corp., 186 F.R.D. 486, 489-90 (N.D. Ill. 1999) (shareholders, who did not suffer separate and distinct harm, may not sue for injuries suffered directly by corporation); Meyers v. Brinson Advisors, Inc., No. 02-CV-0222, at 4 (S.D. Ill. July 22, 2002) (Herndon, D.) (mutual fund shareholders, who did not suffer individual injury distinct from injury to fund, may not maintain action to recover damages for injury suffered directly by fund).

Whether shareholders may assert claims directly or only on a derivative basis is governed by the law of the state in which the business organization is organized. Green, supra, 186 F.R.D. at 489. Columbia Trust is a Massachusetts business trust. Complaint, ¶ 6. Massachusetts law requires claims for shareholders indirect injury to be asserted derivatively on behalf of the entity. Lapidus v. Hecht, 232 F.3d 679, 683 (9th Cir. 2000) (applying Massachusetts law, which relies upon Delaware law); Green, supra, 186 F.R.D. at 489; Bessette v. Bessette, 385 Mass. 806, 434 N.E.2d 206, 208 (1982); Houser v. River Loft Assoc. L.P., No. Civ. A 98-4312B, 1999 WL 33594570, at *3 (Mass. Super. Ct. Mar. 15, 1999); Greenspun v. Lindley, 36 N.Y.2d 473 (N.Y. Ct. of Appeals 1975) (applying Massachusetts law to a Massachusetts business trust).

Courts in this and other circuits regularly dismiss shareholder suits seeking to recover for harm suffered indirectly from the diminution of the entity's asset or share value as a result of an injury to the entity itself. Strougo v. Bassini, 282 F.2d 162, 174 (2d Cir. 2002) (loss in corporation's share value due to depletion of assets may redressed only through derivative action); Flynn v. Merrick, 881 F.2d 446, 450 (7th Cir. 1989), citing, Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 8459 (2d Cir.) cert. denied, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582

(1986) ("any decrease in value of plaintiffs' shares merely reflects the decrease in value of the firm as a result of the alleged illegal conduct" and did not confer standing on the shareholders); Roeder v. Alpha Indus., Inc., 814 F.2d 22, 29-30 (1st Cir. 1987) (shareholder could not maintain securities fraud and RICO class action seeking damages for decline in stock value because injury was not peculiar to him and fell alike on other shareholders); Warren v. Mfrs. Nat'l Bank of Detroit, 759 F.2d 542 (6th Cir. 1985) (corporate shareholder could not maintain individual action against bank for fraud that resulted in corporation's bankruptcy); Meyers, supra, No. 02-CV-0222, at 5 (mutual fund shareholders could not individually maintain claim against fund's investment adviser for breach of fiduciary duty alleging indirect injury through diminution of fund value); Rose v. Schantz, 201 N.W.2d 593, 597-98 (Wis Sup. Ct. 1972) (where the injury to the corporation is the primary injury, and any injury to stockholders secondary, it is the derivative action alone that can be brought and maintained).

Whether a plaintiff shareholder's claims seek redress for injuries that can be directly asserted by the shareholder or a class of shareholders or instead seek to recover for injuries that can be asserted only derivatively on behalf of corporation is determined by the pleading's substance, not "the plaintiff's designation or stated intention." Labovitz v. Washington Times Corp., 172 F.3d 897, 901 (D.C. Cir. 1999); Kramer, supra, 546 A.2d at 352, quoting Lipton, supra, 514 A.2d at 1078.

Plaintiff alleges that, as a result of improperly calculating the Fund's NAV, the Fund's "NAV is diluted," the "fund assets suffer dilution" and the Fund experiences "increased trading and transaction costs, disruption of planned investment strategies, forced and unplanned portfolio turnover including the liquidation of investments to meet market timer redemption requests, lost opportunity costs and asset swings that negatively impact fund operations, performance and the

ability of the fund to provide a maximized return to long term shareholders."  Complaint, ¶¶ 36,
38.  Thus, any damages incurred by plaintiff as a result of the alleged misconduct were suffered
in common by all Fund shareholders indirectly as a result of the alleged dilution of the Fund,
rather than directly and individually.  Plaintiff fails to allege any damage that he suffered directly
and individually, rather than jointly and indirectly as one of the numerous shareholders of the
Fund.  Accordingly, any claim belongs to, and may be asserted only by, the Fund.

   The law of the state of incorporation governs the allocation of corporate governing
powers between the directors and individual shareholders and prescribes the requirement for
making demand upon a corporation to sue on a claim before a shareholder may assert it
derivatively on behalf of the corporation.  Kamen v. Kemper Financial Services, Inc., 500 U.S.
90, 108-09, 114 L.Ed.2d 152, 111 S.Ct. 1711, 1722-23 (1991).  Columbia Trust is a
Massachusetts business trust.  Complaint, ¶ 6.  Under Massachusetts law, in order to file a
derivative action on behalf of a corporation, a shareholder first must demand that the
corporation's board of directors or its shareholders prosecute the litigation.  See  Mass. Gen.
Laws ch. 156B, § 46;  Harhen, supra, 730 N.E.2d at 865.  The demand requirement is excused
only when it would be futile due to the board's interest in the dispute.  Id.  The demand
requirement applies to a Massachusetts business trust.  Greenspun, supra, 36 N.Y.2d 473
(applying Massachusetts law to a Massachusetts business trust).  Rule 23.1 of the Massachusetts
Rule of Civil Procedure requires a plaintiff in a derivative action to plead with particularity the
efforts made to obtain the desired action from the corporation's directors or shareholders and the
reason for any failure to make the effort or obtain the action.  See  Jackson, supra, 547 N.E.2d at
1148 (summary judgment entered for defendants on grounds that plaintiffs failed to allege efforts
to obtain  desired action from defendants).

Plaintiff's Complaint does not mention, let alone plead with the required particularity, any demand he made to Columbia Trust's board of directors seeking to obtain the requested relief or allege any facts that would excuse demand. This Court should dismiss Counts I, II and II of plaintiff's Complaint with prejudice on this ground alone.

## B.   Even if Plaintiff's Claims Somehow Are Not Derivative, Columbia Management Owes No Duty to Plaintiff.

Even if plaintiff's claims somehow are not derivative, Columbia Management owes no duty to plaintiff. Plaintiff alleges that he purchased shares in the Fund. Complaint, ¶¶ 8, 11, 49. Plaintiff's Complaint acknowledges that Columbia Trust is the registrant of the Fund and that Columbia Management "has been contracted to serve as the investment manager for" the Fund. Complaint, ¶¶ 6-7. Columbia Management's contract to serve as the Fund's investment manager is with Columbia Trust, not the shareholders of the Fund, such as plaintiff. Columbia Management's duties run to the Fund and Columbia Management owes no duty to plaintiff. Therefore, plaintiff lacks standing to sue Columbia Management.

Where a party owes duties to a corporation or association, that party owes no duties directly to the corporation or association's shareholders unless there is a separate special relationship between the party and the shareholders. Vincel v. White Motor Corp., 521 F.2d 1113, 1118 (2d Cir. 1975); Olesh v. Dreyfus Corp., 1995 WL 500491, at * 7 (E.D.N.Y. 1995) (mutual fund shareholders could not assert direct claims against fund's investment adviser alleging breach of fiduciary duty for failing to protect the fund assets against future advisory fee increases because adviser has no special relationship with and owed no duty directly to shareholders).

Since Columbia Management's duties run to the Fund and Columbia Management owes no duty to plaintiff, plaintiff lacks standing to sue Columbia Management. This Court should dismiss Counts II and II of plaintiff's complaint with prejudice on this ground alone.

## II.   Plaintiff's Federal-Law Claim States No Cause Of Action.

### A.   There is No Private Right of Action Under Section 36(a) of the ICA.

Count I of plaintiff's Complaint purports to assert a claim for violation of Section 36(a) of the Investment Company Act of 1940 (the "ICA"), 15 U.S.C. § 80a-35(a). Plaintiff alleges that defendants breached their fiduciary duties and duties of reasonable care under the ICA by failing to (a) properly calculate the Fund's NAV in a manner that accounted for significant events affecting the value of the Fund's securities portfolio and, (b) implement the Fund's portfolio valuation and share pricing policies and procedures, which benefited market timing traders in the Fund. Complaint, ¶¶ 52-53. However, the ICA authorizes only the Securities Exchange Commission to enforce Section 36(a) of the ICA and there is no private right of action under that section. Therefore, plaintiff's purported individual claim under that provision fails to state a claim upon which relief can be granted.

In determining whether a federal private right of action exists for violation of a federal statute, the Supreme Court has held, the inquiry must engage in statutory construction, focusing on the intent of Congress and beginning with the text and structure of the statute. Alexander v. Sandoval, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). Several courts have construed the ICA to exclude private rights of action under other sections of the Act. Olmsted v. Pruco Life Ins. Co. of New Jersey, 283 F.3d 429, 432-36 (2d Cir. 2002) (rejected private right of action under Sections 26(f) and 27(i)); Dorchester Investors v. Peak International Ltd., 134 F.

Supp. 569, 581 (S.D.N.Y. 2001) (no private right of action under Section 34(b)).  These holdings were based on (a) the absence of language explicitly creating a private right of action, (b) the presence of language explicitly providing for enforcement of the provision by the SEC, and (c) the clear recognition of private right of action in other sections of the statute.  Olmsted, 283 F.3d at 433.

The unambiguous language of Section 36(a) of the ICA similarly precludes the recognition of a private right of action for its enforcement.  Section 36(a) of the ICA states that "[t]he Commission is authorized to bring an action" against an officer, director, member of any advisory board, investment adviser, depositor or principal underwriter of a registered investment company for breach of fiduciary duty involving personal misconduct.  15 U.S.C. § 80a-35(a).  The plain language of that provision authorizes only the SEC to enforce its terms.  "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."  Olmsted, 283 F.3d at 433, quoting Sandoval, 532 U.S. at 290, 121 S.Ct. at 1511.

In fact, the immediately following section of the ICA, Section 36(b), expressly states that, in addition to the SEC, "a security holder of such registered investment company" is authorized to bring a derivative action on behalf of the investment company.  15 U.S.C. § 80a-35(b).  "Congress' explicit provision of a private right of action to enforce  one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional."  Olmsted, 283 F.3d at 433.  As the Supreme Court has observed, "[o]bviously . . . when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly."  Touche Ross & Co v. Redington, 442 U.S. 560, 572, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).  To recognize a private right of action where a statute does not provide for one "would encroach upon the

powers of legislation reserved for Congress." Olmsted v. Pruco Life Ins. Co. of New Jersey, No. CV-00-1340, 2000 WL 1739307 at *4 (E.D.N.Y. Oct. 30, 2000). The Seventh Circuit has expressly reserved the question whether there is a private right of action ender Section 36(a). See Green v. Nuveen Advisory Group, 295 F.3d 738, 744 n. 9 (7th Cir. 2002); Rowland v. Engle, 113 F.3d 706, 715 n. 9.

### B. The Complaint Fails to Allege a Breach of Any Fiduciary Duty Involving Personal Misconduct or Any Other Breach of a Duty Under the Statute.

First, even assuming *arguendo* that a private right of action exists under Section 36(a) of the Investment Company Act, plaintiff has failed to allege that Columbia Management breached any fiduciary duty involving personal misconduct as that provision requires. Section 36(a) forbids "a breach of fiduciary duty involving personal misconduct." 15 U.S.C. § 80a-35(a). Where the plaintiff fails to allege a breach of fiduciary duty involving fraud, self-dealing, conflict of interest or personal gain, his claim fails to state a cause of action for violation of Section 36(a). See Bloom v. Bradford, 480 F. Supp. 139, 145 (E.D.N.Y. 1979) (allegations not involving self-dealing dismissed for failure to state a claim for violation of Section 36).

In cases that have upheld the sufficiency of a claim for violation of Section 36(a), the pleading alleged a breach of fiduciary duty involving fraud, self-dealing, conflict of interest or personal financial gain as a result of the challenged transactions. See Fogel v. Chestnutt, 533 F.2d 731, 750 (2d Cir. 1975), cert. denied, 429 U.S. 824, 97 S. Ct. 77, 50 L. Ed. 2d 86 (1976) (personal profit from failure to recapture brokerage commissions); Moses v. Burgin, 445 F.2d 369, 384 (1st Cir. 1971) (failure to disclose possibility of recapture of brokerage commissions to unaffiliated directors); Aldred Inv. Trust v. SEC, 151 F.2d 254, 260 (1st Cir.), cert. denied, 326 U.S. 795, 66 S. Ct. 486, 90 L. Ed .2d 483 (1946) (self-interest and personal advantage in

acquiring horse-racing track in order to take advantage of lucrative salaries); <u>Whitman v. Fuqua</u>, 549 F. Supp. 315, 323 (W.D. Pa. 1982) (improper adoption of corporate resolutions and unauthorized expenditures); <u>Cambridge Fund, Inc. v. Abella</u>, 501 F. Supp. 598, 622 (S.D.N.Y. 1980) (failure to disclose fund's reimbursement of manager and officer's legal expenses for SEC administrative proceeding); <u>SEC v. Commonwealth Chem. Sec., Inc.</u>, 410 F. Supp. 1002, 1018 (S.D.N.Y. 1976) (self-dealing).

Plaintiff has failed to allege that Columbia Management committed fraud or self-dealing or engaged in conduct resulting in direct personal financial gain as a result of the challenged transactions.  This is a sufficient reason in  itself to dismiss Count I.

Second, even if Section 36(a) were not limited to "personal misconduct," Count I alleges no breach of any duty on the part of Columbia Management.  A mutual fund's legal duty to calculate its NAV is governed by the Investment Company Act of 1940 and the Regulations promulgated by the Securities and Exchange Commission under that Act.  15 U.S.C. § 80a-22(c); 17 C.F.R. §§ 270.2a-4, 270.22c-1 and 270.22e-2.  Those regulations require only that a mutual fund calculate its NAV to reflect "changes in holdings of portfolio securities . . . no later than in the first calculation on the first business day following the trade date."  17 C.F.R. § 270.2a-4(a)(2).

Plaintiff's Complaint does not allege that defendants have failed to comply with those regulations.  Complaint, ¶ 13.  Plaintiff's quarrel is with the substance of the regulations. Plaintiff seeks to impose on defendants a duty to recalculate the Fund's NAV on a more frequent basis to account for information generated by "the continuous trading of world equity market indexes, ADRs and foreign currency futures markets."  Complaint, ¶¶ 30, 31, 37, 53, 57.

However, none of the statutes or regulations governing the management and operation of mutual funds require defendants to take this extraordinary step. "A fiduciary is under no duty to engage in legally doubtful experiments virtually unsupported by custom or convention or court decision." Moses v. Burgin, supra, 445 F.2d at 383, quoting Moses v. Burgin, 316 F. Supp. 31, 57 (D. Mass. 1970). Defendants' daily calculation of the Fund's NAV to reflect changes in the Fund's holdings comports with the applicable federal law and, thus, defendants do not owe the asserted duty to plaintiffs. For each of the foregoing reasons, this Court should dismiss Count I of plaintiff's Complaint with prejudice.

### III.   Plaintiff's State-Law Claims Are Preempted by Federal Law.

#### A.   Any State-Law Claim is Preempted Because the ICA Requires Uniformity with Respect to the Obligations Asserted by Plaintiff.

Two counts of the complaint set forth purported claims apparently based on state law. Thus, Count II alleges a claim for common law negligence and Count III alleges common law gross negligence. Complaint, ¶¶ 57, 62. Since state law is the basis for plaintiff's claims, any such state law is preempted by federal law, i.e., the Investment Company Act.

It is well-established that Congress may preempt state authority not only by stating so in express terms but by implication. Congress' intent to displace state law may be evidenced by its "occupation of the field" (Fidelity Federal Loan Assn. v. De la Cuesta, 458 U.S. 141, 102 S.Ct. 3014 (1982)) or by the conflict with federal law or policy that the application of state law would create. Such a conflict arises when compliance with both federal and state regulations is impossible (Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43, 83 S.Ct. 1210 (1963)) or where state law "stands as an obstacle to the accomplishment and execution of

the full purposes and objectives of  Congress" (<u>Hines v. Davidowitz</u>,  312 U.S. 52, 67, 61 S. Ct. 399 (1941); <u>Geier v. American Honda Motor Co</u>., 529 U.S. 861,  874,  120 S. Ct. 1913  (2000)).

Any state law attempting to impose valuation rules on mutual funds is clearly displaced by the Investment Company Act of 1940 on all the grounds that can bring preemption into play. A mutual fund's legal duty to calculate its NAV is governed by the Investment Company Act of 1940 and the Regulations promulgated by the Securities and Exchange Commission under that Act.   15 U.S.C. § 80a-22(c);   17 C.F.R. §§ 270.2a-4, 270.22c-1 and 270.22e-2.   The  Act, together with the regulations thereunder promulgated by the SEC, prescribes in detail how mutual fund shares are to be valued for purposes of sales and redemptions of such shares.  Those regulations require only that a mutual fund calculate its NAV to reflect "changes in holdings of portfolio securities . . . no later than in the first calculation on the first business day following the trade date."  17 C.F.R. § 270.2a-4(a)(2).  The statute and those regulations are comprehensive; they fully occupy "the field" of  establishing the principles and rules mutual funds must follow in setting the price at any given time for issuance or redemption of shares.

Plaintiff's Complaint acknowledges that defendants recalculated the Fund's NAV to reflect changes in the value of its holdings of its portfolio securities on a daily basis, as those federal regulations required.  Complaint, ¶ 13.  Without any citation of statutory or case law authority, plaintiff alleges that defendants owed a duty to calculate the Fund's NAV in a different specific manner in accordance with plaintiff's or other individual shareholders' wishes and directions.  Complaint, ¶¶ 56-57, 60, 62.

Even though plaintiff acknowledges that the SEC requires only a daily recalculation of a mutual fund's NAV to reflect changes in the value of its holdings of portfolio securities, plaintiff

demands that defendants take the further unrequired step and follow his personal desires and directions by recalculating the Fund's NAV on a more frequent basis to account for information generated by "the continuous trading of world equity market indexes, ADRs and foreign currency futures markets."  Complaint, ¶¶ 30, 31, 37, 53, 57.  However, neither the statutes or regulations governing the management and operation of mutual funds nor any state statute of case law requires defendants to take this extraordinary step.  Defendants' daily calculation of the Fund's NAV to reflect changes in the Fund's holdings comports with the applicable federal law and, thus, defendants owe no such duty to plaintiffs.

It is also clear that preemption is required because of the clash between federal law and state rules that would ensue.

Congress obviously intended in the ICA to prescribe a *uniform* national system of regulation for investment companies.  The operations of  mutual funds are intensely interstate in character.  Subjecting them to the potentially varying requirements of 50 states as to the most critical element of trading – the price of the shares at any given moment – would introduce huge complexities, if it would not indeed make impossible an effective interstate market in the shares of mutual funds.  Congress cannot possibly have contemplated the continued existence of state authority over such matters when it enacted the Investment Company Act.  Introducing state  law into this aspect of the operation of mutual funds would thus create a serious "obstacle to the accomplishment of the full purposes of Congress."

Equally as serious as the mere lack of uniformity, however, is the fact that resort to state rules on valuation of mutual fund shares would inevitably make it impossible for mutual funds to comply with both federal law and state law.  The complaint asserts that the defendants have a

duty to value the Fund's shares on some basis other than the closing prices at which the underlying securities are traded, and seeks to have a jury impose liability on the basis of whatever a jury determines was the correct standard.  It is impossible for a mutual fund to comply with such an unknown standard of valuation in even one state, let alone such standards as  might be  imposed by lawsuits brought under the laws of any of the 50 states, and any attempt to do so would cause the funds to violate the specific valuation rules prescribed by the ICA and its regulations.  Thus  plaintiffs' claims, in so far as they may be based on state law,  invoke the strongest of all grounds for finding preemption, namely the impossibility of complying with both federal law and the hypothesized state law.

The issue presented is very similar to the one involved in the Supreme Court's quite recent decision in Geier v. American Honda Motor Co., supra, except that the necessity for preemption is even clearer here.  In Geier  the plaintiff brought a common-law tort action contending that the failure of an auto manufacturer to provide airbags in the model in which plaintiff was injured was negligent.  The Supreme Court held that state negligence law was preempted by the federal safety legislation and regulations, because the imposition of   an absolute airbag requirement  was inconsistent with the federal policy of allowing manufacturers to choose from a variety of passive restraints.  For the reasons we have already noted, the clash of state and federal rules for valuation of mutual funds presents an even more clear-cut example of frustration of federal policy and impossibility of observance of both federal and state requirements, and therefore compels dismissal of plaintiff's state-law claims as preempted by federal law.

**B.   Plaintiff's State Law Claims Also Are Preempted by SLUSA.**

Plaintiff's state law claims also are preempted and barred by the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 77p, 78bb(f) ("SLUSA") because they allege a misrepresentation or omission of a material fact or manipulative or deceptive device or contrivance, in connection with the purchase or sale of a covered security.

In the 1990's, Congress enacted legislation to redress the problems associated with abuses that were occurring in the prosecution of securities fraud class action "strike suits,"   in which corporations were compelled to pay substantial sums to settle meritless suits in order to avoid potentially burdensome litigation expenses.   Congress first enacted the Private Securities Litigation Reform Act (the "PSLRA") which applied to federal securities class actions and established heightened pleading requirements, mandatory stays of discovery pending motions to dismiss and a "safe harbor" for certain forward looking statements.   Behlen v. Merrill Lynch, 311 F.3d 1087, 1090-91 (11th Cir. 2002);   In Re Silicon Graphics Sec. Lit., 183 F.3d 970, 973 (9th Cir. 1999);   Feitelberg v. Merrill Lynch & Co., Inc., 234  F.Supp.2d 1043, 1046 (N.D. Cal;. 2002);   Denton v. H&R Block Fin. Advisors, Inc., No. 01 C 4185, 2001 WL 1183292, at *2 (N.D. Ill. Oct. 4, 2001).   In an attempt to circumvent the PSLRA restrictions, class plaintiffs filed putative class actions based on state law in state courts where those restrictions did not apply. Behlen, supra, 311 F.3d at 1091;   Denton, supra, 2001 WL 1183292, at *2.

In 1998, Congress enacted SLUSA in order to redress this new problem.   SLUSA amended the Securities Act of 1933 and the Securities Exchange Act of 1934 and provided that the federal court is the exclusive venue for class actions alleging fraud in connection with the purchase and sale of covered securities.   15 U.S.C. § 77p, 78bb(f).   See  Behlen, supra, 311 F.3d

at 1091-92;  Denton, supra, 2001 WL 1183292, at *2.  SLUSA applies to "covered class actions," which are defined to include lawsuits in which (a) damages are sought on behalf of more than 50 persons or putative class members, or (b) the plaintiffs seek to recover damages on a representative basis on behalf of themselves and other unnamed similarly situated parties, and common questions of law or fact predominate over individual questions.   15 U.S.C. § 78bb(f)(5)(B)(i).  Pursuant to SLUSA, a private party may not maintain a covered class action in state or federal court if it is based upon State law alleging (a) a misrepresentation or omission of a material fact, or (b) the use or employment of any manipulative or deceptive device or contrivance, in connection with the purchase or sale of a covered security.   15 U.S.C. § 78bb(f)(1).  SLUSA provides that a covered class action filed in State court may be removed, preempted or dismissed.  15 U.S.C. § 78bb(f)(2).

Plaintiff brings this action "individually and on behalf of all others similarly situated," defined "as a class of all persons in the United States" who purchased and owned shares in the Fund for a specified period.  Complaint, at 1, ¶ 39.  The Complaint further alleges that common questions of law or fact predominate over individual questions.  Complaint, ¶ 42.  Therefore, this action constitutes a "covered class action" within the meaning of SLUSA because (a) damages are sought on behalf of more than 50 persons or putative class members, or (b) the plaintiffs seek to recover damages on a representative basis on behalf of themselves and other unnamed similarly situated parties, and common questions of law or fact predominate over individual questions.  15 U.S.C. § 78bb(f)(5)(B)(i).

Plaintiff's Complaint also concerns a "covered security" within the meaning of SLUSA.  SLUSA defines a "covered security" as a security that is subject to Section 18(b)(1), (2) of the Securities Act of 1933, 15 U.S.C. § 77r(b)(1)(2).  Shares of the Fund constitute securities issued

by an investment company registered under the Investment Company Act of 1940.  15 U.S.C. § 80a-22(c) [check].  Therefore, plaintiff's Complaint concerns a "covered security" within the meaning of SLUSA.

Plaintiff's claims are preempted and barred by SLUSA because they are based upon state law and allege a misrepresentation or omission of a material fact or manipulative or deceptive device or contrivance, in connection with the purchase or sale of a covered security.   In determining whether a state law claim is preempted by SLUSA, "the focus is on the substance of the claim and not the plaintiff's characterization of it."  <u>Denton</u>, 2001 WL 1183292, at *3.

In his Complaint, plaintiff has attempted to cast his and the putative class members' positions as holders, rather than purchasers, of shares in the Fund.   Complaint, ¶¶ 8, 39.  However, the substance of the purported claims pled is predicated on the plaintiff's purchase of shares in the fund.     Plaintiff's Complaint alleges that Columbia Trust "has promoted, marketed, and sold shares to the investing public nationwide including the State of Illinois."  Complaint, ¶ 6 (emphasis added).   Plaintiff observes that Columbia Trust's business affairs include "share marketing."   Complaint, ¶ 7.   Plaintiff's claims are predicated on the fact that defendants "sold" shares in the fund "to investors such as Plaintiff."   Complaint, ¶ 11.

The gravamen of plaintiff's complaint is that defendants induced plaintiff and the other class members to purchase shares in the Fund by "effectively marketing the various advantages of long term ownership of funds over direct investment."   Complaint, ¶ 10.  **That alleged marketing and inducement occurs when investors such as plaintiff choose to purchase shares in the Fund rather than engage in direct investment** by purchasing individual stocks in their own names**.**  Plaintiff alleges that defendants' purported misrepresentations or omissions

relate to the purchase and sale of the foreign securities by plaintiff and the other shareholders through the Fund.  Complaint, ¶¶ 14-15, 30-31.  Plaintiff complains that those statements were materially false because defendants' method of calculating the Fund's NAV permits market timing traders to "predict changes in the [Fund's] NAV," buy shares in the Fund at discount prices and sell shares in the Fund at premium prices.  Complaint, ¶¶ 15, 30-33.  Therefore, plaintiff's claims allege a misrepresentation or omission of a material fact or manipulative or deceptive device or contrivance, in connection with the purchase or sale of a covered security.  Accordingly, Plaintiff's claims are preempted and barred by SLUSA.

## Conclusion

For the foregoing reasons, plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed with prejudice in its entirety.

Respectfully submitted,

STINSON MORRISON HECKER LLP

By ____/s/ Jon A. Santangelo_____
    Jon A. Santangelo
    100 South Fourth Street
    Suite 700
    St. Louis, Missouri 63102
    Phone:  (314) 259-4500
    Fax:      (314) 259-4599
    E-mail:  jsantangelo@stinsonmoheck.com

    and

Phil C. Neal
Mark A. Rabinowitz
Neal, Gerber & Eisenberg, LLP
Two North LaSalle Street
Suite 2200
Chicago, Illinois 60602
E-mail:  pneal@ngelaw.com
             mrabinowitz@ngelaw.com
Phone:  (312) 269-8000
Fax:       (312) 269-1747

*Attorneys for Defendant*
*Columbia Wanger Asset Management LP*

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on this 10th day of February, 2004, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Stephen M. Tillery
Korein Tillery
10 Executive Woods Court
Swansea, IL 62226
E-mail:  stillery@koreintillery.com

George A. Zelcs
Three First National Plaza
70 West Madison Street
Suite 660
Chicago, IL 60602
E-mail:  gzelcs@koreintillery.com

Andrew S. Friedman
Bonnett, Fairbourn, Friedman & Balint, P.C.
2901 North Central Avenue
Suite 1000
Phoenix, AZ 85012
E-mail:  afriedman@bffb.com

Gordon R. Broom
Troy A. Bozarth
Regina L.L. Wells
Burroughs, Hepler, Broom,
        MacDonald, Hebrank & True LLP
103 West Vandalia Street
Suite 300
Edwardsville, IL 62025
E-mail:  grb@ilmolaw.com tmf@ilmolaw.com,amb@ilmolaw.com;
        troy.bozarth@ilmolaw.com par@ilmolaw.com,alf@ilmolaw.com;
        rlw@ilmolaw.com par@ilmolaw.com

Eugene Barash
701 Market Street
Suite 300
St. Louis, MO 63101
E-mail:  ebarash@koreintillery.com

John W. Rotunno
Kenneth E. Rechtoris
Daniel J. Hayes
Bell, Boyd & Lloyd LLC
70 West Madison Street
Suite 3300
Chicago, IL 60602-4207
E-mail:  jrotunno@bellboyd.com
          krechtoris@bellboyd.com
          dhayes@bellboyd.com


      I also hereby certify that on this 10th day of February, 2004, the foregoing was mailed by
United States Postal Service to the following non-participants in Electronic Case Filing:

John J. Stoia, Jr.
Timothy G. Blood
Susan Collyer
William J. Doyle, II
Milberg Weiss Bershad Hynes
     & Lerach LLP
401 B Street, 17th Floor
San Diego, CA 92101

Francis J. Balint, Jr.
Bonnett, Fairbourn, Friedman & Balint, P.C.
2901 North Central Avenue
Suite 1000
Phoenix, AZ 85012


                */s/ Jon A. Santangelo*
             *Attorneys for Defendant*
             *Columbia Wanger Asset Management LP*